Wachtler, J.
On April 2, 1968, Hersz Kalechman, a 26-year-old sales technician employed by Speizman Knitting Machine Company (Speizman) was killed in a collision between a truck and an automobile owned by the defendant Drew Auto Rental, Inc. At the time of the accident, Kalechman was a passenger in the defendant’s automobile en route to Mexico to develop new territory for his employer. The car which was on an extended lease to Speizman was being driven by David Trigub, Kalechman’s father-in-law, who although not an employee of Speizman, had gone along to share expenses and help Kalechman with the driving.
The accident occurred when Trigub, proceeding westbound on a two-lane highway, crossed the dividing line and entered the eastbound lane, accelerating to approximately 60 miles an hour in order to pass two trucks. After passing one truck he drew abreast of the other which suddenly turned left in front of him.
Kalechman was survived by two infant children (one born posthumously) and his wife, the plaintiff, who as administratrix of his estate commenced this action for wrongful death and conscious pain and suffering. Drew Auto Rental, the owner of the vehicle, is the only defendant named in the action and its liability rests entirely on section 388 of the Vehicle and Traffic Law which states: “ Every owner of a vehicle used or operated in this state shall be liable and responsible for death or injuries to person or property resulting from negligence in the use or operation of such vehicle, in the business of such owner or otherwise, by any person using or operating the same with the permission, express or implied of such owner.”
The sole issue on this appeal is whether the driver’s negligence should be imputed to the passenger so as to bar any recovery against the owner under section 388 of the Vehicle and Traffic Law.
The defendant presented this issue to the trial court by an affirmative defense and a motion for summary judgment. ‘ ‘ The very basis of [the] motion for accelerated judgment ” the defen *400 dont states, culling from its brief “ is that plaintiff be given the benefit of all the elements sufficient to support a verdict in her favor — save decedent’s freedom from contributory negligence.” The motion was denied by the trial court on the ground that there were “ issues of fact which require a plenary trial ”. The Appellate Division, Second Department, reversed holding that the deceased, as custodian of the vehicle “had dominion and control over Trigub and the latter’s negligence must therefore be imputed to him in an action against the owner ”. One Justice (Shapiro, J.) reluctantly concurred, noting that the present law worked a questionable result: “Plaintiff is denied recovery— with resultant unfair benefit to the insurance carrier — because she sued the owner of the automobile directly instead of suing the negligent driver. If she had done the latter, she would have been defended by this very defendant’s insurance carrier and the recovery would have been the latter’s responsibility. A denial of a recovery to an injured plaintiff or, as in this case, to the estate of a decedent, which is entirely based on a legal fiction and which defies reality, is a sort of alchemy which to me seems clearly unjust and unreasonable.” (38 A D 2d 974-975).
Under the existing law the resolution of this issue is almost academic.
The leading case is Gochee v. Wagner (257 N.Y. 344). In Gochee the plaintiff passenger was the owner of the automobile which was being driven by his wife when it collided with the the defendant’s vehicle. In a suit by the plaintiff for personal injuries and property damage to his vehicle the jury found that both drivers were negligent.
This court held that the contributory negligence of the driver should be imputed to the owner because ‘ ‘ he was present and had the legal right to control [the] operation ” of the vehicle (Gochee, supra, at p. 348).
Subsequently in a brief series of cases the doctrine was alternately extended and limited. It has been extended to impute the driver’s negligence to a passenger who is either a lessee (Ullery v. National Car Rental System, 23 N Y 2d 677) or a sublessee (Kleinman v. Frank, 34 A D 2d 121, affd. 28 N Y 2d 603) in an action against the owner or a third party. It has . been limited so that the driver’s negligence will not be imputed to the passen *401 ger where the driver has an equal right (Jenks v. Veeder Contr. Co., 264 App. Div. 979, affd. 290 N. Y. 810) or a superior right to control the operation of the vehicle (TJllery v. National Gar Rental System, supra) or where the action is against the driver himself. (Kleinman v. Frank, supra.)
The rule that has emerged can he stated as follows:
The driver’s negligence will be imputed to the passenger to defeat his action whenever the passenger has the exclusive authority to control the operation of the vehicle, except in a case where the driver himself is the defendant.
Turning to the case at bar, it is obvious that the passenger Kalechman, as the employee of the lessee, had custody and control of the vehicle. Unless the plaintiff was able to show that Trigub had been granted equal or superior authority over the operation of the vehicle the driver’s negligence must be imputed to the passenger. On this point the plaintiff notes that certain officers of the Speizman Oo. had been informed that Kalechman intended to take his father-in-law on the trip; but since there is no allegation or indication that Trigub was given any right to control the operation of the vehicle, the plaintiff has failed to demonstrate a triable issue (compare Ullery v. National Car Rental System, supra).
Thus the application of Gochee and its progeny is clear, but as Justice Shapiro noted at the Appellate Division, the result is somewhat anomalous. Adopting this criticism, the plaintiff urges that she not be barred from doing directly something she might do indirectly.
This circumstance of course was absent from the Gochee case. There it is clear that there was no indirect route for imposing liability on the defendant. Obviously a suit by the passenger-owner against his own driver would not have reached the owner of the other vehicle.
As a practical matter then, the plaintiff argues, there is clearly a valid reason for distinguishing between those cases in which the defendant is the owner of the other vehicle (Gochee, supra) and cases such as the one at bar in which the defendant is the owner of the vehicle in which the passenger was injured. Presumably since Gochee simply stands for the proposition that the driver’s negligence will be imputed to the passenger having constructive control of the vehicle, when the suit is against a *402 third party, the distinction could easily be explained by holding that the owner of the vehicle in which the passenger was injured is, like the driver of that vehicle, not to be considered a third' party in á suit by the passenger or his representative. Since we impliedly held otherwise in two decisions (see Ullery v. National Car Rental System, supra; Kleinman v. Frank, supra) the essence of the plaintiff’s argument is that we modify the existing Gochee doctrine and hold the rulé inapplicable in cases where it might be effectively circumvented by resort to an indirect approach.
Of course the fact that the law effectively precludes a direct approach but leaves the plaintiff an indirect avenue to the same result, is not an unfamiliar phenomenon. While it is undoubtedly' undesirable, this circumstance alone might not warrant modification of this State’s doctrine of imputed contributory negligence. However there are certain other aspects of the rule which deserve reconsideration in light of modern technological developments, changing attitudes and recent innovations in the law.
One of the most frequently made and obvious criticisms of the doctrine of imputed contributory negligence is that it rests on a legal fiction which has no basis in reality. (See, e.g., Kleinman v. Frank, supra [Hopkins, J., dissenting]; Kalechman v. Drew Auto Rental, 38 A D 2d 974 [Shapiro, J., concurring]; Lessler, Proposed Discard of the Doctrine of Imputed Contributory Negligence, 20 Fordham L. Rev. 156; Imputed Negligence in Automobile Accident Cases, 16 St. John’s L. Rev. 222.)
However in fairness to the rule it should be noted that at the time of its inception it apparently represented a realistic appraisal of the relationship between passenger and driver. One commentator has offered the following explanation of the genesis of the rule: “ If the owner of a wagon and team handed the reins over to a passenger and let him drive, control of the horses was within easy reach. If he didn’t think the driver reined up fast enough at a railroad crossing, he could reach out and resume control. * * * Actual control was a possibility, not a fiction.” (Op. cit., 16 St. John’s L. Rev. 222.) But with the advent of the modern automobile there is no longer any basis for assuming that the passenger, no matter what his relationship to the driver may be, has the capacity to assert control over or direct the operation of a moving automobile. The design of *403 the vehicle, the high speeds at which it travels, the split second timing which is often necessary to avoid collision have all combined to erode the assumption that anyone other than the driver can effectively control the operation of the vehicle in traffic.
In fact, under modern driving conditions anyone who “ allows another to drive would only increase the risk of accidents by interfering with the driver’s control of the car or by diverting his attention ” (op. cit., 16 St. John’s L. Rev. 222). Although it might have been practical in the past, the modern highway is clearly the wrong place to assert the right to control. 11 Certainly assertion of such rights in the course of operation is not timely, nor in the interest of public safety. ’ ’ (Jenks v. Veeder, 177 Misc. 240, 242 [Bergan, J.], modified as to amount of verdict 264 App. Div. 979, affd. 290 N.Y. 810, supra.)
Thus the concept now rests on a pure legal fiction, which insofar as it assumes or encourages interference with the driver’s function, conflicts with public policy. All this serves to illustrate the wisdom of Cabdozo’s celebrated observation that “ Precedents drawn from the days of travel by stage coach do not fit the conditions of travel to-day.” (MacPherson v. Buick Motor Co., 217 N. Y. 382, 391.)
A more telling criticism of the doctrine of imputed or vicarious contributory negligence is that it is an illegitimate offspring of the vicarious liability concept, which only serves to frustrate the broad policy goals of the parent rule.
Obviously if the doctrine has any conceptual validity it must work both ways. If the passenger’s responsibility for the driver’s conduct is sufficient to destroy his claim against a third party, it should also be sufficient to impose liability on the passenger in an action by a third party. (See, e.g., Little v. Hackett, 116 U. S. 366; Gregory, Vicarious Responsibility and Contributory Negligence, 41 Yale L. Rev. 831; Prosser, Torts, [4th ed.], p. 488; 2 Harper and James, Torts, 1264; Restatement, 2d, Torts, § 485.) This so-called “ both-ways test ” which has the appeal of formal symmetry and fairness was originally envisioned as a “ vehicle for humane law reform ” (2 Harper and James, op. cit., p. 1273).
This limitation is undoubtedly correct as far as it goes, for it would clearly be absurd to hold the plaintiff passenger guilty of contributory negligence when he would bear no responsibility *404 for the driver’s acts had he (the passenger) been made a defendant in the action. However even with this limitation the doctrine of imputed contributory negligence remains indefensible. To treat it as a natural compliment to vicarious liability leads to a paradox for ‘ ‘ a rule which departed from the common law in response to an urge towards wider liability is being used to curtail liability by expanding the scope of a defense to it.” (2 Harper and James, op. cit., p. 1274; see, also, Continental Auto Lease Corp. v. Campbell, 19 N Y 2d 350.)
But the most unfortunate consequence of the doctrine of imputed contributory negligence as it presently functions in this State is that it primarily serves to bar claims for personal injury and death. It is only in suits for property damage that we have been able — to some extent — to limit its application. Thus in Continental v. Campbell (supra) we reaffirmed the rule of Mills v. Gabriel (284 N. Y. 755) holding that section 388 of the Vehicle and Traffic Law which imputes to an absentee owner the negligence of his driver, for the purpose of imposing liability for injury to a third party, may not be used to impute contributory negligence to the absentee owner in an action to recover for property damages to his vehicle.
In sum the Gochee rule is based on an unrealistic fiction, conceptually flawed, serves no useful social purpose and frustrates the express public policy ‘ ‘ that one injured by the negligent operation of a motor vehicle should have recourse to a financially responsible defendant. The owner of the automobile [being] the obvious candidate ”. (Continental, supra, at p. 352.) It survives only as a remnant of the past reflecting a period in the history of the common law when the relationship between the passenger and the driver was generally considered to be a relevant circumstance in determining the passenger’s right to recover for injuries. (See Prosser, op. cit., p. 488.)
But it no longer has any place in the present scheme of tort liability where the paramount consideration is to give full effect to the ‘ ‘ vital interest of society in protecting people from losses resulting from [vehicular] accidents” (Gelbman v. Gelbman, 23 N Y 2d 434, 439). In accord with this policy the modern tendency, both in this court and the Legislature, has been to abolish or refuse to adopt defenses based on the relationship between the passenger and the negligent driver and to *405 substitute the more desirable rule that the passenger’s right to recover should depend solely upon his own conduct in actually controlling the vehicle or in failing to exercise control or to take such action as is reasonably required by the circumstances. Thus in this State we have abandoned the defense of intra-family immunity (Gelbman v. Gelbman, supra), rejected the guest statute concept (see Babcock v. Jackson, 12 N Y 2d 473, 482) and abolished the common-law doctrines imputing the negligence of a parent to a.child (Domestic Relations Law, former § 73), the child to the parent (4 N. Y. Jur., Automobiles, § 416) or one spouse to another spouse (Michelson v. Stuhlman, 272 N. Y. 163).
Clearly we have reached the point where the general rule now is that the passenger’s right to recover should not be barred merely because he bears some special relationship to the driver — a rule to which Gochee represents a somewhat incongrous exception. On prior occasions we have noted that a “ rule which so incongrously shields conceded wrongdoing bears a heavy burden of justification ”. (Badigian v. Badigian, 9 N Y 2d 472, 475 [Fuld, J., dissenting], later cited with approval in Gelbman v. Gelbman, supra, at p. 437.) This is a burden which Gochee quite obviously cannot satisfy.
We have therefore concluded that Gochee v. Wagner should be overruled, and that the general rule should be applied without exception by allowing the plaintiff passenger to recover for negligent operation of the vehicle — no matter what his relationship to the driver may be — unless it is shown that his own personal negligence contributed to the injury.
The order of the Appellate Division should be reversed, motion for summary judgment denied and the case remanded for trial in light of this decision.